Hardman Heitzenreither, Appellant, *v.* J. E. Long, M.
W. Wise, P. S. Weber, L. A. Brady, William Wingert,
C. C. Hindman, Sidney Fuller, trading as the Bank of
DuBois.

*Compromise settlement—Assent of creditor—Question for jury.*

The members of an insolvent banking firm agreed to turn over certain
individual property in consideration of a release from individual liability.
In a suit by a creditor the crucial question was as to his alleged participa-
tion in an agreement to accept the partners' proposition. The question
was properly one for the jury, and their verdict is decisive of a common
purpose among the creditors participated in by the plaintiff to secure the
payment of their claims by compromise and settlement, and their verdict
will not be disturbed in view of the fact that plaintiff reaped the full bene-
fit of the settlement with the other creditors.

*Trusts and trustees—Assignment for creditors—Settlement with creditors.*

A person who happens to be a member of an insolvent banking institu-
tion may assign his individual property in trust to aid the bank in paying
its debts without having his act declared a general assignment for the ben-
efit of all his creditors, unless it appears that the assignment is made be-
cause of his inability to pay his debts.

*Practice, C. P.—Duty of court in answering point.*

It is the duty of the court to answer points, and it is its right and privi-
lege to so answer them as to place before the jury the true question to be
decided.

Argued March 15, 1897.  Appeal, No. 38, Feb. T., 1897, by
plaintiff, from judgment of C. P. Clearfield Co., May T., 1895,
No. 416, on verdict for defendant.  Before WILLARD, WICK-
HAM, BEAVER, REEDER, ORLADY and SMITH, JJ.  Affirmed.

Assumpsit to recover for a deposit of $210.

The defendants were doing business under the name of The
Bank of DuBois, which closed its doors on March 14, 1895, by
reason of insolvency.  On the same day the bank closed its
doors, and immediately thereafter, nearly all the defendants
confessed judgments for large amounts for obligations outside
of any bank transactions, which were entered of record, and
some of them conveyed part of their property to relatives and
other friends.

Other facts are sufficiently recited in the opinion of the court. Verdict and judgment for defendant.   Plaintiff appealed.

*Errors assigned* were among others (1) In its answer to plaintiff's first point.   The point and answer thereto are as follows : " 1. The plaintiff had a legal cause of action against the defendants on the day on which he brought this suit against them, to wit: on the 22d of March, 1895, to recover the amount due him from the bank of DuBois.   *Answer :* This point, as an abstract proposition of law, we affirm, but it does not follow that the plaintiff is entitled to recover.   If the jury determine, under the evidence, that the claim sued for has been settled or paid since the bringing of the suit, then the defendant could not recover the amount sued for March 22, 1895."   (3) In its answer to plaintiff's third point.   The point and answer thereto are as follows : " 3. If the jury believe from the evidence in the cause that the plaintiff was requested, with other creditors of the bank of DuBois, to be present at a meeting which is said to have been held in July, 1895, to hear a proposition that the stockholders or copartners of the bank of DuBois had to submit to its creditors, and if the plaintiff attended said meeting he would not be bound by the action then and there taken by other creditors if he did not participate or take part in the proceedings of said meeting.   *Answer :* If the jury find the facts as stated in this point, the fact that he was present at the meeting and took no part might not of itself bind him to the terms of the contract of composition, yet if he were present when the proposition of settlement was submitted to the creditors' meeting, and adopted without any dissent on his part and he afterwards accepted the benefit of the terms of settlement there proposed and accepted by the creditors' meeting, he would be bound by the same and could not recover."   (4) In its answer to plaintiff's fourth point.   The point and answer thereto are as follows : " 4. The fact that the plaintiff brought this suit on March 22, 1895, the evening of the day on which the first meeting of the creditors was held, is evidence that he did not intend to be bound by the action which might be taken by other creditors, or to place the management of his claim against the bank in the custody and control of anyone else than his attorneys. *Answer :* This point simply involves a question of fact for the

jury.   The jury must determine the intent of plaintiff from his acts and conduct.   And we therefore decline to affirm this point." (7) In its answer to plaintiff's seventh point.   The point and answer thereto are as follows : " 7. There is not sufficient evidence in the cause of the plaintiff participating in any meeting of the creditors or of his approval of the proceedings or action taken by any meeting or committee of creditors that would deprive him of the right to prosecute his claim against the defendants to verdict and judgment. *Answer :* This point involves questions of fact for the jury under the evidence, to be determined by the jury under the rules of law laid down by the court in its general charge, and we decline to affirm the point as stated." (8) In its answer to plaintiff's eighth point. The point and answer thereto are as follows : " 8. The fact that the plaintiff received from Hugh McCullough, receiver of the bank of DuBois, a portion of his claim, would not estop him from prosecuting his action to judgment, as he had a legal right to receive his proportionate share of all the money in the hands of Hugh McCullough as assignee of the defendants or receiver of the bank of DuBois, which the said Hugh McCullough received in trust for the benefit of the creditors of the bank of DuBois. *Answer :* The evidence in the cause conclusively shows that the receiver had received from the stockholders, of their individual assets, thirty per cent of the fifty per cent paid to plaintiff, under the terms of the composition agreed upon between the stockholders and the creditors at a creditors' meeting held in July, 1895, which were assets that did not come into his hands by virtue of his authority as receiver.   To this fund the plaintiff had no legal claim at the time.   We therefore, under the evidence in the cause, cannot affirm this point." (9) In its answer to plaintiff's ninth point.   The point and answer thereto are as follows: " 9. The defendants had it not in their power under the laws of this state when they transferred property or paid money to Hugh McCullough as trustee for the creditors of the bank of DuBois, to give any preference to creditors who might sign a release of the copartners from liability.   The said property and money so placed in the hands of Hugh McCollough inured to the benefit of all of the creditors of the bank of DuBois and was an assignment for the benefit of creditors under the laws of this state. *Answer :* If this point

assumes that the agreement of composition submitted to the creditors' meeting held in July, 1895, and accepted by said creditors' meeting without any dissent, was an assignment for the benefit of creditors, we decline to affirm the point." (10) In its answer to plaintiff's tenth point. The point and answer thereto are as follows: "10. The stipulation in the transfers of property of the defendants to Hugh McCullough in trust for the creditors of the bank of DuBois, that it was only for the benefit of such creditors of the bank as might release the stockholders from further liability, was void under the laws of this state, and such transfer and assignment of money or property inured to the benefit of all the creditors, pro rata, without preference, and the plaintiff was entitled to his share thereof, without being bound to release the defendants from further liability, and without depriving him of the right to recover from the defendants the balance due him. *Answer :* We decline to affirm this point." (11) In its answer to plaintiff's eleventh point. The point and answer thereto are as follows: "11. It appearing from the petition offered in evidence by the defendants, wherein the plaintiff petitioned the court for a rule on Hugh McCullough to show cause why he should not pay the plaintiff 50 per cent of his claim against the bank out of the moneys and the proceeds of property placed in his hands by defendants for the benefit of the creditors of the bank of DuBois, that plaintiff expressly denied that he had entered into any combination or was represented by any committee of creditors, or was bound by their action, but claiming the said percentage under his legal rights as an individual creditor, and no answer having been filed to said petition, and the rule having been made absolute by the court, and the decree unappealed from, it is thereby judicially declared that the plaintiff received said payment in accordance with his petition, and his receipt of said payment does not estop him from prosecuting his claim to verdict and judgment in this case for the balance due to him by defendants. *Answer :* Whether or not the facts stated in this point of themselves would operate as an estoppel it is not our province to determine, as the facts stated therein must be considered by the jury in connection with the other facts in the case, which if found by the jury and taken together may constitute an estoppel to plaintiff's right to recover. We therefore cannot affirm this point." (12) In its answer to

plaintiff's twelfth point. The point and answer thereto are as follows: " 12. From the undisputed evidence in this case the defendants were indebted to the plaintiff, when defendants' bank closed its doors and ceased to do business, by reason of the inability of the defendants' bank to meet its obligations and to pay its depositors, in the sum of two hundred dollars ($200), and the plaintiff is entitled to your verdict for said sum, with interest from March 14, 1895, after deducting therefrom the sum of one hundred dollars ($100), paid on account of said claim June 10, 1896. *Answer:* We refuse to affirm this point." (13) In the following portion of the charge to the jury: " We say to you the money raised under that agreement and put into the hands of the receiver did not operate in law as an assignment for the benefit of partnership creditors. It was a fund separate and distinct from that which would come into the hands of the receiver by virtue of his appointment." (14) In the following portion of the general charge: " So, the question then comes down, did the plaintiff have knowledge of this contract of composition between these creditors, and, having that knowledge, did he avail himself of the benefits of it and appropriate the proceeds on account of his claim? If he did, then he is precluded from recovering against these stockholders, who raised that money, in this action. You are to determine that question. We submit that question of fact to you and you are to determine it from the facts, from the weight of evidence." (16) In the following portions of the general charge: " And, if you find from the evidence that the plaintiff was at the meetings and knew the nature of the compromise proposition submitted, and in pursuance of that proposition of composition among the creditors, and accepted by them, that a large sum of money, $22,000 in cash and $9,000 realized out of real estate converted, or out of a portion of the real estate so conveyed, and that he accepted a portion of that fund which had been raised by virtue of this proposition of composition and knew of it, as we stated before, by himself, from his communication with other parties, in the testimony of Mr. Arnold or others, or that his counsel had knowledge and accepted the results of that agreement of compromise, then he is bound by it and he is precluded from pursuing this suit against these individual stockholders, and it would be your duty then to render a verdict for the de-

fendants. If, however, you can find under the evidence that he had no knowledge of this settlement, that he was ignorant of it, then he would not be bound by it, if he wasn't a party to it; that is, the proposition is, that where a man has knowledge and accepts the benefits of a contract, he thereby becomes a party to it and he cannot accept the benefits of it and repudiate the contract, as has been stated by our Supreme Court and others. And, therefore, if you find under the evidence that he had knowledge of the proposition, which is a binding contract and ample consideration for it in this case as any others, then he would be bound by it." (17) In its answer to defendant's second point. The point and answer thereto are as follows : " 2. That as it appears by the undisputed testimony in the cause that a settlement was agreed on between the defendants and Austin Blakeslee, William Osburn and William Cannon, a committee appointed by creditors of said bank of DuBois, at a public meeting of the creditors; and it also appearing ·by the undisputed testimony that the defendants in pursuance of said settlement conveyed a large amount of real estate and paid in cash to Hugh McCullough, receiver of said bank, $22,000 ; and that the said receiver was authorized and directed by the court to carry out said settlement, and did so ; and it further appearing from the plaintiff's petition filed to No. 2, May term, 1895, and from other uncontradicted testimony, that he knew that a portion of the money then being distributed by the receiver was from the cash and real estate received by the receiver under the settlement, and having obtained the order of the court upon the receiver to pay him his pro rata share of the proceeds arising from said settlement and received the same, he has thereby ratified the action of the committee and is estopped from denying that the defendants shall be discharged from further liability even if he was not actively participating in any of the meetings at which the creditors appointed said committee or voted upon the proposition recommended and accepted by the committee, and their verdict must be for the defendants. *Answer:* If the jury find the facts as stated in this point, it is affirmed. For further answer refer to our general charge." (18) In its answer to defendant's third point. The point and answer thereto are as follows : " 3. It appearing from the undisputed evidence in the cause that at a meeting held of a large number of the creditors

of the defendant bank, a committee consisting of Austin Blakeslee, William Osburn and W. H. Cannon was appointed, and was authorized to act for the best interests of all the creditors and do whatever they deemed best in that behalf; that the committee did make a settlement, by which, in consideration of the payment of $22,000 and the conveyance of a large amount of real estate to Hugh McCullough, receiver, the defendants were to be released and discharged from further liability, and it further appearing by the undisputed evidence that plaintiff asked for and received his pro rata share of the funds in the receiver's hands arising from this cash fund so paid, and from the sale of a portion of the real estate so conveyed to the receiver under the settlement with the committee aforesaid, he has thereby ratified the previous action of the committee and is bound by their action and the terms of the settlement made by them, even if he was not present or participating in any of the meetings, and the verdict must be for the defendants. *Answer:* If the jury find that the plaintiff knew of the composition of settlement made with the defendants and he availed himself of the benefits thereof, as stated in the point, then he cannot recover."

*Frank Fielding* and *Singleton Bell*, for appellant.—We have clearly a trust created for the benefit of creditors. We have all the essentials of a trust estate. We have here property, a trustee, a trust and creditors of an insolvent who are to take under it: Lucas v. R. R. Co., 32 Pa. 458.

It seems almost unnecessary to trouble this court with a citation of authorities to sustain our position that this transaction constitutes under the laws of this state an assignment for the benefit of creditors. Our position is clearly sustained in Driesbach v. Becker, 34 Pa. 152. See also Wallace v. Wainwright, 87 Pa. 263; Fallon's Appeal, 42 Pa. 235; Chaffees v. Risk, 24 Pa. 532.

In principle this case is not distinguishable from the Miners' National Bank's Appeal, 57 Pa. 192.

All preference of the plaintiff under the assignment was annulled by the act of 1843: Heckert's Appeal, 24 Pa. 483; Vanarsdale v. Richards, 1 Whart. 408.

Preferences in a deed of assignment for the benefit of creditors do not render the deed ineffectual as a general assignment:

Kern v. Powell, 98 Pa. 253; Hondenpuhl v. Hines, 160 Pa. 466; Bell's Appeal, 166 Pa. 134.

*D. L. Krebs* of *Krebs & Paterson*, with him *Murray & Smith*, for appellee.—The legal questions are all readily grouped under three heads :

First.—Did the plaintiff by his presence and actions at the meetings called in behalf of the creditors make himself a party to the "settlement" made by the "committee" and which was subsequently approved by the meeting of creditors? Second.— If he was not a party thereto, did the plaintiff subsequently ratify the settlement made by the committee of creditors, with the individual members of the partnership trading as the "Bank of DuBois," so as to be bound thereby? Third.—Was that settlement and adjustment made an assignment for the "benefit of creditors" under the provisions of the Act of Assembly approved April 17, 1843, P. L. 273?

The plaintiff with knowledge of the terms of the settlement ratified it and is bound thereby. A subsequent ratification is equivalent to a previous authority: Culver v. Ashley, 1 Am. L. C. (4th ed.) *589; Paley on Agency, 324; Ward v. Evans, 6 Modern, 36; s. c. (2 ed.) Raymond, 928; Thorold v. Smith, 11 Modern, 88; Wilson v. Poulter, 2 Strange, 859; Clarke v. Ryall, 1 W. Blackstone, 642; Herring v. Polley, 8 Mass. 113; Lent v. Paddelford, 10 Mass. 238; Clement v. Jones, 12 Mass. 60.

The decisions of our own courts are equally clear and strong upon this question of ratification: Mundorff v. Wickersham, 63 Pa. 87; Keough v. Leslie, 92 Pa. 425; Imbrie v. Ins. Co., 178 Pa. 6.

This principle, that one who demands and receives the benefit that flows from the acts done or contracts made by another assuming to act for him, cannot be permitted to repudiate the residue of the arrangement, and deny the authority under which he receives the benefit, is distinctly recognized in the following cases : Boyd v. Smith, 128 Pa. 205–213; Goldbeck v. Kensington Bank, 147 Pa. 267; McCulloch v. McKee, 16 Pa. 289.

It would be an anomolous thing in law, if a party can enforce a part of a contract, by a proceeding based on the contract, and repudiate the other part of the contract, and say I am not bound thereby because the party who made it had no authority to act

for me: Despatch Packets v. Bellamy Co., 12 N. H. 206; Finney v. Ins. Co., 46 Mass. 192; Patton v. Brittain, 10 Ire. 8; Newell v. Hurlburt, 2 Vt. 351.

The settlement made with the "creditors' committee" is not within the Act of April 17, 1843, P. L. 273.

The Act of April 17, 1843, P. L. 273, sec. 1, was never intended to defeat the conveyance of property to pay all the creditors of a partnership or of an individual. The case in hand differs from all assignments for the benefit of creditors, in this, that the "creditors' committee" as agents of all the creditors negotiated and consummated the settlement. The settlement was made in good faith. The "creditors' committee" were active and able business men. It was the best thing to do. More than nineteen twentieths of the creditors promptly accepted, and it remained for six or seven individuals to come into court, demand their pro rata proportion of the benefits flowing from this settlement, and after receiving the same, refuse to be bound by the terms of the settlement. The law will not tolerate this. In the language of SHARSWOOD, J., in Mundorff v. Wickersham, 63 Pa. 87, "He cannot ratify that part which is beneficial to himself and reject the remainder, he must take the benefit to be derived from the transaction cum onera."

OPINION BY WILLARD, J., April 19, 1897:

The bank of DuBois was a private banking company or copartnership. J. E. Long, M. W. Wise, P. S. Weber, L. A. Brady, William Wingert, C. C. Hindman and Sidney Fuller were the members of the copartnership. On the 14th day of March, 1895, the bank closed its doors and suspended payment. On the 22d of March a meeting of the creditors was called for the purpose of formulating and adopting a plan of action for the best interest of all the creditors. At this meeting a committee of five creditors was appointed to act for themselves and other creditors, and they were instructed to procure a judgment bond in the sum of $100,000 to be signed by the individuals composing the copartnership. On the 23d of March by a decree of the court of Clearfield county in equity, Hugh McCullough was duly appointed as receiver to take charge of the partnership property and effects and wind up its business according to law, subject to the order and direction of the court. To this pro-

ceeding there was no objection raised by debtors or creditors. On the 24th or 25th of March a second meeting of the creditors assembled and to this meeting the committee of five reported that they had procured a judgment bond for $100,000. It was signed by all the alleged copartners except Sidney Fuller. The committee also reported that they had procured the appointment of Hugh McCullough as receiver. The report of the committee was approved by the meeting. At this meeting the committee was reduced to three in number and constituted a permanent committee, to act for the creditors. They were authorized and empowered by the meeting to bring suits and do whatever they deemed necessary in their judgment to secure the interest of the creditors of the bank of DuBois as a whole. This committee subsequently received a proposition from the individual members of the banking firm proposing a settlement as follows: J. E. Long to turn over property and convey real estate of the value of $32,400 ; M. W. Wise to convey real estate of the value of $13,350 ; P. S. Weber to convey real estate of the value of $3,350 ; and L. A. Brady of the value of $1,000, amounting in all to the sum of $50,050. The individual members of the firm were also to contribute $22,000 in cash with a further guaranty of $6,750 to meet any necessary deficiency. That this proposition, if accepted, should discharge the copartners from all liability to the creditors or depositors of the bank.

The committee being satisfied with the proposition agreed on their part to procure the assent of the creditors, and for that purpose called another meeting in July, 1895. By a vote of that meeting the proposition was accepted and by another vote it was agreed that the money should be turned over to Hugh McCullough and that he should take conveyances of the real estate and hold it for the creditors until it could be converted into cash for the benefit of all the creditors.

At this time the receiver had realized cash from the assets of the bank of DuBois equal to twenty per centum of the claims against the bank. The money and real estate furnished by the individual partners under the agreement, after it passed into the hands of Hugh McCullough by the joint action of the creditors and the persons who furnished and conveyed it, appears to have been treated by orders and decrees of the court as under its jurisdiction and control and no one appears to have objected thereto.

On the 16th of January, 1896, on presentation of the receivers' petition reciting the offer of settlement and the action of the creditors thereon, the court made the following order: " The receiver, Hugh McCullough, is authorized and directed to do whatever is necessary to be done in order to carry out and consummate the arrangement and proposition mentioned in the within petition."

In January, 1896, the receiver had in his hands, undistributed, a sufficient sum of money, derived from the assets of the bank, to pay to its creditors twenty per centum of their claims, and a sufficient sum derived from the property turned over to him by the individual copartners, under the direction of the committee and the agreement made between them, to pay thirty per centum of all the claims.   Most of the creditors took the dividend and released the stockholders in writing according to the offer. This the appellant refused to do and the receiver refused to pay him unless he would sign a paper releasing the copartners. Whereupon the appellant filed his petition in the equity proceeding setting forth that there were large sums of money in the hands of the receiver derived from the copartnership assets and from the assets of the members of the copartnership, which was a proper fund for general distribution among the creditors; that in the negotiations attending the transaction of the affairs of the bank by the receiver or creditors he had not joined; that he had not been represented by any person or committee of creditors authorized to act for or bind him; that Hugh McCullough, the receiver, had paid to some of the creditors and depositors about fifty per centum of their claims; that he had demanded of the receiver the same pro rata payment that he had paid to other creditors of the bank, but had been refused except as to the twenty per centum derived from the assets of the bank; that he is informed that the receiver will pay him fifty per centum of his claim if petitioner will sign a paper discharging the persons composing the copartnership, late trading as the bank of DuBois, from further liability, and the refusal of your petitioner to sign said agreement is given by the receiver as his reason for refusal to pay your petitioner fifty per centum.

Upon this petition a rule was granted as prayed for on Hugh McCullough, receiver, to show cause why he should not forth-

with pay to the petitioner the same pro rata dividend upon his claim that he had paid to other creditors and depositors of the bank of DuBois.  On the return of the rule, no answer having been filed, the court made the following order: " Now, June 1, 1896, the rule in this case is made absolute, and the receiver of the bank of DuBois, Hugh McCullough, is hereby directed to pay unto the petitioner fifty per centum of his claim, being the amount he has paid to the other creditors of the bank of DuBois, and for so doing, this shall be his sufficient voucher in the settlement of his accounts as receiver."

The plaintiff brought his action on the 22d day of March, 1895, to recover the sum of $200 deposited by the plaintiff in the bank of DuBois and unpaid.  On the trial there was positive testimony that each question relative to the settlement was determined by a vote of the creditors in three meetings thereof, and that upon each question, including the appointment and authority of the negotiating committee, there was an unanimous affirmative vote.  There was also testimony that the appellant was present at each of these meetings.  He denied that he was present at the last two meetings, but the question was submitted to the jury.  In January, 1896, the receiver forwarded to the appellant a notice and form of receipt, which receipt was signed and returned by the appellant's attorney under date of June 10, 1896 ; it is as follows :

"DuBois, Pa., January, 1896.

" Mr. H. Heitzenreither :—

" Your account on the books of Bank of DuBois is $200.

"Enclosed find check for $100, being a 20 per cent. dividend of said account from assets of said bank, and 30 per cent. special dividend from funds contributed by stock holders pursuant to agreement.

" Please sign the receipt below and return to me at once.

"Hugh McCullough,
" Receiver of Bank of DuBois."


"Received, June 10, 1896, of Hugh McCullough, Receiver of the Bank of DuBois, $100, as a payment of a dividend of account against Bank of DuBois.

"Singleton Bell,
" Attorney for H. Heitzenreither. "

Indorsement on back of receipt:

"No. 606.   Voucher.   Claim of H. Heitzenreither versus Bank of DuBois.

| | | |
|---|---|---|
| Dividend 20 per cent. . . . . . | $ | . |
| Special 30 per cent. . . . . . | | . |
| Total 50 per cent. . . . . . | | 100.00. |
| Deduction 6 per cent. . . . . . | | 1.20. |
| Am't. Check remitted, . . . . | | 98.00. |

"The amount deducted above is your pro. rata share of the 1 per cent. of your claim which you agreed to pay to creditors' committee."

To the action in the court below the defendant pleaded payment.   The jury found a verdict for the defendant.

When the appellant brought his action in the court below he had an undoubted right to recover the full amount of his deposit in the bank of DuBois, as set forth in his statement of cause of action.   If however he subsequently compromised and settled his claim, that fact could be shown on the trial under the plea of payment.   In affirming appellant's first point the learned trial judge added no more by way of qualification than the facts of the case demanded in order to protect the rights of the parties.   It is the duty of a judge to answer points, and it is his right and privilege to so answer them as to place before the jury the true question to be decided.

The copartnership assets, when converted into cash, were sufficient to pay only twenty per centum of the creditors' claims. By an agreement, however, fully set forth in our statement of the facts, certain money was turned over and certain real estate was conveyed to the receiver, in trust, to be by him applied in payment of the claims of all the creditors, with the agreement that the turning over of the money and the transfer of the real estate should discharge the individual copartners from any further liability to the creditors.   This transfer, it is claimed by the appellant, was not a contract to which he was a party, but amounted to a general assignment for the benefit of creditors, and he having received but a portion of his claim from the assignee was entitled to a verdict for the balance; while on the part of the appellees it is contended the property was placed in

the hands of Mr. McCullough under an express agreement that it was for the purpose of paying all the creditors alike, with the single condition that the assignors should be discharged from further liability on turning over the property, and that the appellant was a party to that agreement and, therefore, a purchaser for value, and having received a part of his purchase money he is now estopped from asserting that the transaction amounted to a general assignment for the benefit of creditors.

If the jury arrived at a correct conclusion under proper instructions, that the appellant was a party to the agreement, and by said agreement his claim was settled and paid, it matters not by what name it is designated. But as the appellant's printed argument is directed largely to this question, we have carefully considered it.

The bank of DuBois, as a partnership concern, came far short of responding to the just claims of its creditors. The individual members of the firm saw fit to make up the deficiency in part at least out of their individual property, stipulating at the same time for immunity from further liability. This, under the circumstances of this case, they had the right to do without having the transaction declared a general assignment on their part for the benefit of creditors. If the assignors were insolvent at the time of the transfer and conveyances and unable to pay their debts, and made the assignment for that reason, there might be some force in the appellant's contention. The act of assembly relied upon apply to persons making assignments on account of the inability of such assignors to pay their debts. The question of the inability of these assignors to pay their debts at the time they made their transfer of the property to Hugh McCullough was only adverted to incidentally in the court below, one or two witnesses on cross-examination expressing the opinion that they could not collect their claims in full out of the copartners. But so far as this record throws light upon the subject, the fact is not established that the members of this firm were unable to pay their debts at the time of the transfer of property by them to help out the bank of DuBois in paying its creditors. The question of their ability or inability to pay their debts was not raised in the issue tried, nor was it submitted to or passed upon by the jury. Therefore, two essentials to make this transaction a general assignment under our statutes are wanting, to wit:

First, inability of the assignors to pay their debts; second, assignment on that account: In re Bryden, Trustee, 42 Leg. Int. 80.

That a person who happens to be a member of an insolvent banking institution may not assign his individual property in trust to aid the bank in paying its debts without having his act declared a general assignment for the benefit of all his creditors, is a proposition that cannot be entertained, unless it appears that the assignment is made because of his inability to pay his debts.

Many of the points presented by the appellant in the court below involved disputed questions of fact. The points were affirmed with a proviso that the jury found the facts as therein stated. It would have been error to have affirmed them without the proviso. The serious question involved in this case turns upon the agreement between the creditors and the appellees, and the appellant's connection therewith. After the bank closed its doors, there was the usual excitement attending the failure of a bank and the locking up of moneys placed on deposit for safe keeping. A meeting of the creditors was soon called for consultation and to devise a plan of necessary concerted action. A committee was appointed by the meeting to act for the creditors and the appellant was present at that meeting, and according to the testimony the action of the creditors was unanimous. At a second meeting a permanent committee was appointed and empowered to act for the best interests of the creditors. At a third meeting of the creditors the proposition of the appellees was presented and acted upon, and according to the testimony was unanimously adopted. There was evidence that the appellant was present at the last meetings; he denied it upon the witness stand and it was left for the jury to decide. There was also evidence of conversation between the appellant and other creditors and persons concerning the proposition, and that through his attorney he received and receipted for fifty per centum of his claim under the terms of the agreement.

The agreement was not equivocal or difficult to comprehend, it provided for the turning over of certain property by the appellees to increase the fund for distribution among the creditors, and the turning over was conditioned upon the release of the

appellees from further liability. The acceptance of the property, or the proceeds thereof when converted into cash, was evidence in connection with other evidence in the case to warrant the jury in finding the appellant a party to the agreement and bound thereby. It is urged, however, that because the money was paid to him under an order of the court based upon certain facts alleged by him in his petition, that by reason of said order and allegations the appellant was not estopped from proceeding and recovering the balance of his claim. In reply to a point put to the court upon this subject the court answered: " Whether or not the facts stated in this point of themselves would operate as an estoppel, it is not our province to determine, as the facts stated therein must be considered by the jury in connection with the other facts in the case, which if found by the jury, and taken together may constitute an estoppel to plaintiff's right to recover."

The appellant's petition was filed in the proceeding in equity and was the foundation for a rule on Hugh McCullough, receiver. We do not think the order or allegations conclusive upon the appellees in the action against them as copartners. If Hugh McCullough did not answer the allegations contained in appellant's petition, it was no fault of the appellees. They had the right to answer the same allegations when confronted with them in this action, and appear to have done so to the entire satisfaction of the jury. The petition and decree were put in evidence on the trial of this case without objection, and considered by the jury with the other evidence. We think the answer to the point was correct.

The fact that there was a stipulation for a written release of the appellees from further liability by all who accepted the proposition, and the appellant's refusal to sign it, is a circumstance urged and relied upon by the appellant. The jury have found under sufficient evidence and proper instruction as to the effect of the evidence, that the appellant was a party to the agreement, reaped its benefits and received his full pro rata share of the money derived therefrom and receipted therefor under its terms.

The evidence in the case fairly submitted to the jury established the fact of a common purpose among the creditors to secure the payment of their claims by compromise and settlement. Relying upon each other and each influenced by the

presence, action and acquiescence of the others, meetings were held and by united action without a dissenting voice questions were voted upon and decided, committees were appointed and authorized to act according to their best judgment for the whole body of creditors, the action of the committees adopted, resulting finally in the adoption and ratification of the proposition presented by the individuals composing the copartnership, and a receipt of a large sum of the money by the creditors, under the terms of the accepted proposition. Under the evidence submitted as above stated, the jury was fully warranted in finding the appellant a party to the settlement by his presence, action, acquiescence and subsequent ratification. He reaped the full benefit of the settlement with the other creditors, and we see no reason why the verdict in this case should be disturbed.

After a thorough examination of the testimony, the charge of the court and the answer to points, we are satisfied that this case was carefully tried in the court below, and every question fairly presented for the consideration of the jury.

· The specifications of error are all overruled and the judgment affirmed.

SMITH, J., concurs in the judgment.